IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| J. ALEX JENNINGS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 04-6114-CV-SJ-RED |
| ADMINISTRATIVE COMMITTEE OF WAL-MART STORES, INC. ASSOCIATES HEATH AND WELFARE PLAN, | ) ) ) ) ) ) |
| Defendant. | ) ) |

## ORDER

NOW before the Court is the Defendant's Motion for Summary Judgment (Doc. 22), Suggestions in Support of Defendant's Motion for Summary Judgment (Doc. 23), Suggestions in Opposition to Defendant's Motion for Summary Judgment (Doc. 29).

### I. STATEMENT OF THE FACTS

Plaintiff is a participant in the Plan which is the Defendant in this action. Plaintiff claims that the administrator's decision that the plan would not cover injuries Plaintiff incurred during a fist-fight was unreasonable.

Defendant is a self-funded employee welfare benefits plan as defined by ERISA. Wal-Mart Stores, Inc. is a sponsor of the plan. It is funded by employee and employer contributions and does not exist to make a profit.

The Administrative Committee of the Plan is the plan administrator and the "named fiduciary" of the Plan as defined by ERISA. The Committee members are not trustees or employees of the Plan, but rather volunteer to serve on the Committee. Members are not compensated based

on the decisions they make, and they receive no incentives based on the outcome of their decisions.

On December 24, 2002, Plaintiff went to see Dr. Craig Wymore, claiming that he had injured his right hand three days earlier in a four-wheeler vehicle accident. Plaintiff had swelling and pain in his hand, and an X-ray showed a transverse fracture in his hand. Dr. Wymore consulted with Dr. William Gondring, an Orthopedic surgeon, and placed Plaintiff's hand in an ulnar gutter splint, and instructed him to follow up with Dr. Gondring in two days.

When Plaintiff met with Dr. Gondring, Plaintiff stated that he had previously told the medical clinic he had been in a four-wheeler accident, but that he actually hurt his hand in a fight when he punched someone. Plaintiff underwent surgery on his right hand and further medical treatment.

Plaintiff submitted his bills to the Defendant for payment, and the Defendant requested further information concerning his injury. At this time, Plaintiff told Defendant that his injury occurred when "[a] fight broke out between two individuals, when I tried to separate them one turned on me, causing a need for self defense."

On February 17, 2003, Plaintiff recounted to one of Defendant's representatives that he broke his hand in a fight when he walked out of a bowling alley and somebody started a fight with his friend. Plaintiff claimed that he tried to break up the fight, and someone took a swing at him, so Plaintiff retaliated in self-defense. No police report regarding the accident was filed.

The Defendant informed Plaintiff that it was denying coverage for the hand injury because a fight was already in progress and he willingly and knowingly entered into the fight on his own. The Plan specifically designated "Charges Not Covered." In this section, "violent behavior" is included and the provision reads as follows: "[c]harges incurred by a participant's vicious and/or violent behavior, unless the injury for which such charges are incurred results from a medical

2

condition or domestic violence."

Plaintiff appealed his denial of benefits. The Administrative Committee reviewed the Record, and affirmed the Defendant's previous conclusion that the provision regarding violent behavior excluded Plaintiff's claim. Plaintiff then filed this suit against the Defendant seeking payment of benefits for the injuries to his hand.

Plaintiff has submitted his own affidavit to contradict some of Defendant's statement of facts. Plaintiff's affidavit would establish that Plaintiff did not actively intervene into the fight which caused his injuries, but that he was drawn into the fight by a third party and had to rely upon self-defense. However, in these types of cases, the Court must only review the information that was before the Committee at the time of its decision. *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 642 (8th Cir. 1997). Plaintiff's claims to his doctor that his injury resulted from self-defense were properly in front of the Committee and thus those facts will be appropriately considered in that light.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fry v. Holmes Freight Lines, Inc.*, 73 F. Supp. 2d 1074 (W.D. Mo. 1999). When ruling on a motion for summary judgment, the court should view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *See id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970)); *Reed v. ULS Corp.,* 178 F.3d 988, 990 (8th Cir. 1999)).

3

If there is no genuine issue about any material fact, summary judgment is proper because it avoids unnecessary and costly litigation and promotes judicial efficiency. *See Fry,* 73 F. Supp. 2d 1075 (citing *Smith v. Marcantonio*, 910 F.2d 500, 502-03 (8th Cir. 1990); *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir. 1979)). The summary judgment procedure is not a "disfavored procedural shortcut." *Id.* Rather, it is "an integral part of the Federal Rules as a whole." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Cunningham v. Kansas City Star Co.*, 995 F. Supp. 1010, 1014 (W.D. Mo. 1988) (citing *Celotex,* 477 U.S. at 324).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The evidence in favor of the nonmoving party must be more than "merely colorable." *Id.* When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (footnote omitted).

### III. STANDARD OF REVIEW

When a benefit plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the standard of review is abuse of discretion, rather than *de novo* review. *Armstrong v. Aetna Life Insurance Co.*, 128 F.3d 1263, 1265 (8th Cir. 1997); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). The deferential abuse of discretion standard of review applies "unless the beneficiary comes forward with evidence establishing that

4

the administrator acted under a conflict of interest, dishonestly, with an improper motive, or without using judgment." *Lawyer v. Hartford Life Acc. Ins.* 100 F. Supp.2d 1001, 1009 (W.D. Mo. 2000) (quoting *Wald v. Southwestern Bell CustomerCare Med. Plan*, 83 F.3d 1002, 1007 (8th 1996)). If such evidence is shown, the review is taken out of an abuse of discretion analysis and is properly *de novo*. A review under an abuse of discretion standard is more deferential to the administrator than one under *de novo* review, and "the court must uphold the plan administrator's construction if it is reasonable." *Shipley v. Arkansas Blue Cross and Blue Shield*, 333 F.3d 898, 901 n.4 (8th Cir. 2003).

Under the standard found to be applicable above, the claim administrator's determination may be reversed only if it was an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). This deferential standard reflects the hesitancy by the courts to interfere with the administration of a benefits plan. *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998). Moreover, the "mere fact that if the discretion had been conferred upon the court, the court would have exercised power differently" is not sufficient grounds to overturn the decision of a plan administrator. *Id*. To evaluate this reasonableness, the court determines if the decision was supported by "substantial evidence which is more than a scintilla but less than a preponderance." *Salhuka v. Lucent Technologies*, 206 F.3d 63 (8th Cir. 2000).

In review of the reasonableness of the plan administrator's determination, the court is limited to the evidence before the administrator at the time of the determination. *Shipley* v. *Arkansas Blue Cross and Blue Shield*, 333 F.3d 898, 901 (8th Cir. 2003). Such a limitation on the evidence "ensure[s] expeditions judicial review of ERISA benefit decisions and [] keep[s] district courts from becoming substitute administrators." *Brown v. Seitz Foods, Inc. Disability Benefit Plan,* 140 F.3d

5

1198, 1200 (8th Cir. 1998); *see also Layes*, 132 F.3d at 1251 (finding the court is limited to considering "only evidence that was before the plan administrator when the claim was denied.")

Plaintiff presents nothing in his response to Defendant's Motion for Summary Judgment to suggest, and the facts do not demonstrate, that any review other than the abuse of discretion standard is appropriate in this case. It is clear that the plan gave "the administrator fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 115 (1989). Furthermore, to review the reasonableness of Defendant's denial, the court will only look to the information before the administrator at the time of the decision.

### III. DISCUSSION

The record before the administrator shows that the decision clearly was reasonable and summary judgment is appropriate. Plaintiff gave differing versions of how he acquired his injuries, from an accident on an ATV, to getting into a fist-fight, to aiding another and acting in self-defense. Plaintiff's most consistent version appears to be that of a fist-fight. It was not unreasonable for Defendants to find that this act came under the "violent behavior" exclusion. Such a decision was based on the facts and reasonable as a matter of law, and certainly could not be said to be an abuse of discretion. *Jackson v. MetLife Ins., Co.*, 303 F.3d 884, 887 (8th Cir. 2002) (finding that the administrator's decision should be supported by "such relevant evidence as a reasonable minds might accept as adequate to support a conclusion.")

Additionally, it is apparent that the interpretation of the Plan language by Defendants was also reasonable. The Eighth Circuit adopted a five-factor test in *Finley v. Special Agents Mut. Ben Assoc. Inc.*, 957 F.2d 617, 621 (8th Cir. 1992) for determining whether an administrator's plan

interpretation is reasonable. The test is as follows: one, it the interpretation consistent with the goals of the plan; two, does the interpretation render any of the plan language meaningless or inconsistent; three, does the interpretation conflict with the requirements of the ERISA statute; four, have the administrators interpreted the words at issue consistently; and five, is the interpretation contrary to the clear language of the plan. *Id.* at 621. The only factor which Plaintiff appears to dispute is the fifth factor, requiring that the interpretation of the wording not be contrary to the plain language of the plan. Plaintiff claims that the wording for the violent behavior exclusion is vague and ambiguous.

The exclusion for injuries caused by violent behavior is as follows: "[c]harges incurred by a participant's vicious and/or violent behavior, unless the injury for which such charges are incurred results from a medical condition or domestic violence." Plaintiff agrees that the injuries for which he claims coverage are the result of a fist-fight. Even accepting as true Plaintiff's version where he was reacting in self-defense, application of the violent behavior exclusion to his behavior is not inconsistent with the plain language of the plan and that provision. The exclusion does not make reference to the actor's intent to engage in the violent behavior, and only makes two specific qualifications for this exclusion – neither of which is appropriate in this case. Clearly, fist-fighting, even if seen as justified, could reasonably meet the exception as stated in the plan. Thus, the Committee's decision was supported by more than a scintilla of evidence and satisfies the Eighth Circuit's test as a matter of law.

7

Case 5:04-cv-06114-RED   Document 38   Filed 01/04/06   Page 7 of 8

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 22) is hereby **GRANTED** in its entirety.

**IT IS SO ORDERED.**

DATE: January 4, 2006                  _/s/ Richard E. Dorr_
                                       RICHARD E. DORR, JUDGE
                                       UNITED STATES DISTRICT COURT